## LOUISVILLE & NASHVILLE RAILROAD CO. v. NEWMAN.

1. Where proper application is made by a non-resident defendant, for the removal of a case from the State court to the United States court, which application is refused by the State court, whose judgment is reversed on writ of error to the Supreme Court of the State, the plaintiff can not dismiss the case, so as to defeat the removal of the case to the United States court, by an entry of dismissal made by his attorney on the original papers, before the remittitur from the Supreme Court has been formally made the judgment of the court from which the case was taken by writ of error.
2. The pendency of an action in a court of the United States, which has been removed from the State court, will abate a subsequent suit in the State court between the same parties, and for the same cause of action, although in such subsequent suit the damages claimed may be reduced below $2,000.

Submitted February 3,—Decided April 20, 1909.

Action for damages. Before Judge Fite. Gordon superior court. March 2, 1908.

*D. W. Blair* and *O. N. Starr*, for plaintiff in error.

*R. J. & J. McCamy* and *T. W. Skelly*, contra.

EVANS, P. J. The bill of exceptions is to review a judgment of the trial court, which refused to abate the plaintiff's action. This is a second suit by the plaintiff, L. H. Newman, against the defendant, the Louisville and Nashville Railroad Company, for the same cause of action. In the first suit the Atlanta, Knoxville and Northern Railway Company, a Georgia corporation, was jointly sued with the Louisville and Nashville Railroad Company; and the latter company filed its petition at the appearance term of the court for the removal of the case to the circuit court of the United States of the northern district of Georgia, on the ground of diverse citizenship. The court refused the petition, and on exception taken to the Supreme Court this judgment was reversed. 128 *Ga.* 283 (57 S. E. 515). The remittitur from the Supreme Court was filed in the office of the clerk of the superior court of Gordon county on May 12, 1907, and on August 30, 1907, the judgment of the Supreme Court was made the judgment of the superior court, and it was further adjudged that "the removal of said case is granted as prayed," and that the railroad company recover the costs of suit of the plaintiff. The costs of taking the case to the Supreme Court were $35.55, which had been paid by the railroad company. On June 10, 1907, the plaintiff paid to the clerk of the superior court.

the sum of .$13.50, which the clerk said was all that was due for
the costs in the original case, and on June 15, 1907, the clerk turned
over this sum to his predecessor in office, who was clerk at the time
the case was filed, heard, and carried to the Supreme Court. On
June 26, 1907, plaintiff's counsel entered on the original papers of
the former suit that the plaintiff dismissed the case without preju-
dice to bringing another suit, and signed the entry. Thereafter, on
July 17, 1907, the plaintiff filed with the clerk her second suit
against the Louisville and Nashville Railroad Company for the
same cause of action; and the defendant pleaded in abatement the
pendency of the first suit, which it averred was pending in the
circuit court of the United States for the northern district of Geor-
gia; and also pleaded in abatement that the second suit was begun
without paying all the costs of the first suit, or filing an affidavit
of the plaintiff's inability to pay. The issues made by the pleas in
abatement were submitted to the judge without the intervention of a
jury, and he rendered judgment overruling the pleas. The excep-
tion is to this judgment.

1. The two matters urged in abatement are antagonistic. The
first suit is still pending, or it has been dismissed. Our first in-
quiry will be directed to determining whether, under the foregoing
facts, the plaintiff's first suit still pends. It has been adjudicated
by this court that the petition to remove the case from the State
court to the circuit court of the United States was in compliance
with the act of Congress, and that the judge of the superior court
erred in refusing to grant the order of removal. 128 *Ga.* 283. The
act of Congress provides, that, upon filing the petition and bond for
removal of the case, "it shall then be the duty of the State court to
accept said petition and bond, and proceed no further in such suit."
4 Federal Statutes Annotated, 349. The requirement is that the
State court shall accept the petition and bond; which may be done
by entering its approval thereon; but the usual and better practice
is to pass an order to remove the case or deny such order in explicit
language. *Jackson* v. *United States Life Ins. Co.,* 60 *Ga.* 427. The
Supreme Court of the United States has held: "The mere filing of
a petition for the removal of a suit which is not removable does not
work a transfer. To accomplish this, the suit must be one that may
be removed, and the petition must show the right of the petitioner
to demand a removal; this being made to appear in the record, and

the necessary security having been given, the power of the State court in the case ends, and that of the United States begins. All issues of fact made upon the petition must be tried in the circuit court, but the State court is at liberty to determine of itself whether on the face of the record a removal has been effected." Stone *v.* South Carolina, 117 U. S. 431 (6 Sup. Ct. 799, 29 L. ed. 962), quoted in *Steiner* v. *Mathewson, 77 Ga.* 659. The general rule as to the removal of cases from a State court to a Federal court has been thus stated by this court: "When a petition is filed showing proper cause for removal, and a bond given according to the act of Congress, the case is ipso facto removed. Where the right of removal does not clearly appear, the rule seems to be that the State court may take into consideration the whole record, including the petition for removal, and may decide whether or not the cause of removal exists. If any issue of *fact* is raised, the State court has no jurisdiction to pass upon it, but must allow the removal and let that issue be tried by the judge of the Federal court." *Southern Ry. Co.* v. *Hudgins,* 108 *Ga.* 524 (33 S. E. 1011). It has been held in Texas that when a motion for removal, accompanied by petition and bond, has been denied by a State court, and the transcript of the record has not been filed in the circuit court, the right to remove may, under certain circumstances, be considered as abandoned, where the defendant makes no complaint of the action of the court in the State Supreme Court on an appeal from the judgment. Texas & Pac. R. Co. *v.* Davis, 93 Tex. 378 (54 S. W. 381, 55 S. W. 562). But when exception is duly taken to the order of the State court refusing to remove the case into a Federal court, and the order of refusal is reversed, the case is to be considered as out of the jurisdiction of the State court since the filing of a sufficient petition and bond. See, in this connection, Steamship Co. *v.* Tugman, 106 U. S. 118 (1 Sup. Ct. 58, 27 L. ed. 87). The plaintiff can not defeat a removal on the ground of separable controversy by striking out of his appeal a prayer for the relief which creates the separable controversy. "The plaintiff can not reduce his claim by amendment, after petition filed, to prevent removal." Kanouse *v.* Martin, 15 How. 198 (14 L. ed. 660). "If the *right* of *removal* has once become perfect, it can not be taken away by any subsequent amendment in State court or Federal court, or by a release of part of the debt, or damages claimed, or otherwise." Dill. Rem. Caus.

§75, p. 93; 15 How. 198 (supra); The Baltic, 1 Blatch. 149 (Fed. Cas. No. 826); Muns *v.* De Nemours, 2 Wash. C. C. 463 (Fed. Cas. No. 9931); Gordon *v.* Longest, 16 Pet. 97 (10 L. ed. 900); *Jones* v. *Foreman,* 66 *Ga.* 381.    See also *Cumberland B. & L. Assn.* v. *Wells,* 99 *Ga.* 228 (25 S. E. 246).    The conclusion is inevitable that the effort of the plaintiff to dismiss her case was ineffectual, and that the original case is still pending in the circuit court of the United States for the Northern District of Georgia, to which jurisdiction the plaintiff should have applied, if she desired to dismiss her action.

2. Does the pendency of the first case in the circuit court of the United States abate the present suit in the State court?    In the new suit the amount laid in the ad damnum clause was reduced below $2,000; but as it is the office of such a clause to state the amount of damages which the plaintiff claims on account of the injury, this circumstance does not alter the essential character of the suit.    It is well settled that if two courts of two distinct sovereignties have jurisdiction of the same matter, the filing of suit in one will not furnish a good plea in abatement to the filing of a suit in the other.    Generally speaking, the Federal courts and the State courts which have concurrent jurisdiction over civil actions may be considered as courts of separate jurisdictional sovereignties; and where an action in personam is brought in the State court, and a suit for the same cause of action is subsequently brought in the United States court, the pendency of the suit in the State court is no·bar to the suit in the United States court.    Stanton *v.* Embry, 93 U. S. 548 (22 L. ed. 983); 1 Cyc. 39.    The converse of this is equally true as·a general proposition, and the pendency of a prior suit in a circuit court of the United States is not a bar to a suit in a State court by the same plaintiff against the same defendant for the same cause of action.    This is the general rule, but it is not without exception.    The several States form a part of the United States.    The Federal government has power to enact laws on certain subjects, conferred by the constitution of the United States, and to administer those laws in the Federal courts in cases properly confided to their jurisdiction.    For reasons which were satisfactory to the legislative discretion, Congress determined that certain cases, when brought in the State courts, might be removed therefrom to the circuit court of the United States.    The purpose was to allow

a transfer of such cases to be made from the State courts, where they might be brought, and where without such a transfer they would be tried, to the United States court, and to confer upon that court jurisdiction to try them. When a plaintiff institutes a suit in a State court, which is removable to the Federal court under the act of Congress, it is the right of the defendant to have a trial of the case in the United States court, upon compliance with the provisions of the act of Congress in regard thereto. It is evident that as to such cases the theory of distinct suits brought in the jurisdiction of separate and independent sovereignties is not applicable. It was never heard of that one sovereign could by law remove to its jurisdiction cases pending in the jurisdiction of an independent foreign sovereign. The government of the United States is complex in character. In many respects each State is a distinct and separate sovereignty with regard to another State and the Federal government. But certain matters have been committed by the constitution of the United States to the general government; and where Congress enacts laws within its constitutional powers, affecting the transfer of a case from the State court to the Federal, such enactment and transfer made in pursuance of it is very different from merely commencing two suits in different jurisdictions. When Congress declared that certain cases might be removed to the Federal court and there tried, and that the State court should "proceed no further in such suit," but the cause should then proceed in the circuit court of the United States in the same manner as if it had been brought there originally, did it mean to confer exclusive jurisdiction upon the circuit court of the United States so long as the suit should be pending there, or did it contemplate that, as soon as the removal should be effected, the same plaintiff could immediately sue again for the same cause of action in the same court whence the removal had been made? Was it the design of Congress, that, as fast as a defendant might exercise his right to remove the case to the circuit court of the United States for trial, the plaintiff might bring a fresh suit in the State court for the same cause of action? If so, the removal act would practically have no effect. It seems to be clear that the system of removal of cases to the circuit court of the United States contemplated that the circuit court of the United States should have exclusive jurisdiction of the cause so long as the case should there be pending. See opinion of Swayne, J., in French

*v.* Hay, 22 Wall. 253 (22 L. ed. 857). If the case be remanded by the Federal court to the State court, the jurisdiction of the latter court reattaches, or, more properly speaking, the jurisdiction of the State court, which was suspended after the removal, is resumed and the case becomes triable in the State court. The provision in the act of Congress for the remand of a case emphasizes the difference between two wholly distinct suits in separate jurisdictions and causes falling within the provisions of the removal act. Suppose we should sustain the judgment of the trial court in this case, holding that the second suit could proceed without reference to the first, and that subsequently the removed case should be remanded from the Federal court to the same State court where the second suit was pending, what would be the situation? There would be two suits then in the same court, but the time for pleading in abatement would have passed, and it would have been formally adjudicated that the suit first brought furnished no ground for interference with the second.

When a suit is removed from a State court to the United States court, and is there dismissed without a decision on its merits, the plaintiff may bring a new suit in any court having jurisdiction ab origine. *McIver* v. *Fla. Cen. R. Co.* 110 *Ga.* 230 (36 S. E. 775, 65 L. R. A. 437) ; *Webb* v. *Southern Cotton-Oil Co.,* 131 *Ga.* 682 (63 S. E. 135) ; Young v. So. Bell Tel. Co., 75 S. C. 326 (55 S. E. 765, 9 Am. & Eng. An. C. 940, 7 L. R. A. (N. S.) 504). When the cause has thus terminated in the circuit court of the United States without prejudice to sue again, it is no longer in that court. There is, however, no permanent fastening of jurisdiction for all time in the Federal court in respect to the matter involved in the suit. But while the case is there pending, that court has exclusive jurisdiction in regard to it and that which is involved in the trial of it. If exclusive jurisdiction was in the Federal court when the new suit was filed in the State court, then the latter court was without jurisdiction so long as the case was pending in the United States court. The acts of Congress passed in pursuance of the constitution of the United States are laws in force in this State ; and if what has been said correctly interprets the removal act, it follows that this plea in abatement should have been sustained.

*Judgment reversed. All the Justices concur, except Beck, J., absent.*